# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:19-CV-00065-KDB-DCK

| | |
|---|---|
| **PORSHA RAMSEUR,**<br><br>Plaintiffs,<br><br>v.<br><br>**CONCENTRIX CVG CUSTOMER MANAGEMENT GROUP INC.,**<br><br>Defendants. | **ORDER** |

Plaintiff Portia Ramseur is a former employee of the Defendant, Concentrix CV Customer Management Group, Inc. ("Concentrix"), who alleges that she was discriminated against because of her religious beliefs in violation of 42 U.S.C. §2000e, *et seq*. ("Title VII"). Now before the Court is Concentrix's Motion for Summary Judgment on all claims (Doc. No. 15). For the reasons discussed below, the Court will grant the motion.

As a matter of law, Concentrix is entitled to summary judgment because Ramseur has not established a prima facie case of religious discrimination on either a disparate treatment theory or a failure to accommodate theory. The Court finds that her allegation that she was discriminated against because of her refusal to work on Sundays as prescribed by her religious faith fails under a disparate treatment theory because she can neither establish that her job performance was satisfactory nor demonstrate that other similarly situated employees who had different beliefs were treated better than she. Ramseur's allegations also do not adequately support her claim of discrimination based on Concentrix's alleged failure to accommodate her religious beliefs. Based, among other evidence, on her long record of absenteeism and Concentrix's prior history of

1

accommodating her request to not work on Sundays, a reasonable trier of fact could not conclude that her religious beliefs were a motivating factor in Concentrix's decision to terminate her.

## I. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be

2

Case 5:19-cv-00065-KDB-DCK    Document 20    Filed 06/15/20    Page 2 of 17

granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II. FACTS AND PROCEDURAL HISTORY

Ramseur is a member of the Discipline of the Fire Baptized Holiness Church of God, which prohibits its members from working on Sundays. She began working for Concentrix in its Hickory, North Carolina call center on January 5, 2009. At that time, the company did not require its employees to work on Sundays, but the company adopted a seven-day workweek in 2011. To avoid working on Sundays, Ramseur requested a religious accommodation. She provided Concentrix

with a letter from her pastor and literature from her church explaining that working on Sundays violated her beliefs. Concentrix granted Ramseur's accommodation request, and, beginning in 2012, the company did not schedule her for Sunday shifts. In addition to her religious accommodation, Ramseur also received permission to take leave under the Family Medical Leave Act to care for her son, who has Down syndrome, beginning in 2012.

Ramseur's Attendance Issues from 2010 to July 2017

Concentrix uses a point system to track each employee's attendance (the "Attendance Policy"). Employees receive points when they are absent or fractions of a point when they are late. For example, employees receive 2 points when they are absent without calling Concentrix—what the company calls a "No-Call-No-Show." As employees receive attendance points, Concentrix's management may make notations on the employee's personnel file, give verbal counselings or issue written counselings. If an employee accumulates 12 attendance points, then he or she can be terminated under the Attendance Policy. Ramseur signed and acknowledged that she understood the Attendance Policy, which remained the same throughout her employment.[1]

Ramseur received several verbal counselings regarding her attendance points throughout 2010. By October 2010, Ramseur had received 8.75 attendance points. In December 2011, Ramseur received a written counseling because she had 24.5 attendance points (which partially reflected points for Sunday absences because Concentrix had begun to schedule its employees on Sundays earlier that year). However, in April 2012 Ramseur's supervisor removed 16 points from

---

[1] By its ruling, the Court does not express an opinion on the wisdom or fairness of Concentrix's Attendance Policy, which appears to treat an employee who accrues 12 attendance points over a decade worse than an employee who accrues 10 points in six months.

4

her attendance record for her prior absences on Sundays. With this modification, Ramseur had accrued a total of 10 attendance points, none of which related to Sunday absences.

In January 2014[2], Ramseur received a verbal counseling because she had 10.75 points. In May 2014, Ramseur received a written counseling because she had received 12.25 attendance points, and she signed the corresponding Counseling/Separation Record to acknowledge the written counseling. Thus, as of May 2014, Concentrix's records show that Ramseur had received enough attendance points to permit her termination. Ramseur concedes that from April 2012 to May 2014, Concentrix did not schedule her on Sundays.

By May 2017 Ramseur had accrued 40 attendance points and received another written counseling for her absences. However, Ramseur refused to sign the written counseling document because she believed that the 40 points included ones that should have been taken off for FMLA time. In July 2017, Ramseur received more written counseling for her 40 attendance points and again she refused to sign the written counseling document.

When asked at her deposition about the total number of her points as of July 2017, Ramseur explained that she did not know whether she had more than 12 attendance points "because the points were not being deducted like they should have." Ramseur asserts that she believes that her points would have been under 12 had her FMLA and religious accommodation been deducted correctly. Ramseur's claimed basis for this belief is that she "went to work and [she] worked. And if they would have taken the points off correctly from – for my FMLA and with the Sundays, [she] would not have had 12 points." When asked if she had any documents supporting her belief,

---

[2] Ramseur dated the Counseling/Separation Record that includes a list of her absences and tardy arrivals from throughout 2013 as January 6, 2013. Since the list of attendance points attached to this Counseling/Separation Record is a summary of Ramseur's attendance throughout all of 2013, it appears that the January 2013 date is a mistake and the proper date of the list of absences is likely January 6, 2014.

Ramseur said that she did not. Ramseur has also not produced any evidence specifically disputing the days / absences documented by Concentrix to support her beliefs regarding her record of absences. Instead, she testified that she had not "actually…done the math to figure out how many points [she] would have had." Finally, at oral argument Ramseur's counsel acknowledged that Ramseur could not provide any evidence other than her stated general belief that she had fewer than 12 attendance points at the time of her termination.

Concentrix's August 2017 Shift-Bid and Ramseur's Termination

On August 6, 2017 Concentrix held its semi-annual shift bid, during which employees bid on teams with designated schedules. At this shift bid, only 2 out of 15 teams were scheduled to have weekends off. When Ramseur bid, one of those teams had already filled, and Ramseur chose not to bid on the other team with weekends off (which had a fixed afternoon schedule). Thus, per her voluntary bid, Ramseur was placed on a team with a flexible morning schedule and rotating hours and days off, which meant that she would be scheduled to work some Sundays.

Concentrix's record of Ramseur's attendance shows that she was scheduled to work only on two Sundays in 2017. Ramseur was absent from work on both Sundays, and Concentrix's record of Ramseur's attendance points shows that she received one point for each absence.[3] Concentrix's record of Ramseur's schedule shows that she was also scheduled to work on Tuesday, September 5. Ramseur claims that she had that Tuesday off. In any event, she did not go to work that day and

---

[3] At oral argument, Concentrix argued that Ramseur was not reprimanded for her absences on Sunday, August 6, 2017 and Sunday, September 3, 2017, and the record does not show that Ramseur received verbal or written counseling because of these absences. However, Concentrix's calculation of Ramseur's attendance points shows that she received a point for each Sunday absence in 2017, which resulted in a total of 2 points (out of more than 50 total points) being added to her attendance record. Pl. Dep. Ex. 11 81, 84, ECF No. 15-2.

did not call Concentrix to report her absence. Concentrix recorded her absence as a "No-Call-No-Show" for September 5, 2017, and she received two more attendance points for that day.

According to Concentrix, after her absence on September 5, Ramseur had accrued over 50 attendance points. Wheatley testified that on September 5 Ramseur's supervisor, Senior Operations Manager Marshall Perry, contacted him to request that Wheatley approve Ramseur's termination. Wheatley and Concentrix's Site Leader approved Ramseur's termination after considering "the number of Ramseur's excessive attendance points…and the numerous verbal and written counselings Ramseur had previously received." Concentrix thus terminated Ramseur's employment on September 5. Ramseur claims that Perry told her she was "fired for not coming to work on Sunday" when she arrived the next day for her next scheduled shift.[4]

Procedural History

Ramseur filed a charge with the EEOC on December 21, 2017, and the EEOC issued a Notice of Right to Sue letter to her on February 26, 2019. Ramseur timely filed this lawsuit on May 23, 2019. Following discovery and an impasse at Mediation, Concentrix filed this motion for summary judgment on April 24, 2020.

---

[4] At oral argument, Ramseur argued that Perry's statement reflects direct evidence of discrimination, and Concentrix argued that Ramseur could not establish a nexus between Perry's alleged conduct and the decisionmakers' choice to terminate her. As explained above, Wheatley testified in his declaration that Perry "request[ed] my approval for her termination." Pl. Dep. Ex. A ¶29, ECF No. 15-1. There is, however, no evidence in the record as to what Perry told Wheatley in the conversation in which he recommended Ramseur's termination. *Id*. As discussed below, Ramseur must provide facts from which a jury could reasonably conclude that, even assuming Perry made the alleged statement regarding her termination, Perry was the decisionmaker for her termination or that the decisionmaker(s) was/were motivated at least in part by an unlawful reason in deciding to terminate her. Ramseur did not pursue either of these issues in discovery—she did not depose Perry or Wheatley – so the record is bare of evidentiary support for either argument.

7

## III. DISCUSSION

Ramseur alleges religious discrimination pursuant to Title VII. A plaintiff may establish a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See generally Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir.2004) (en banc); *Cherry v. Elizabeth City State University*, 147 F.Supp.3d 414, 421 (E.D.N.C. 2015)

Direct evidence is evidence from which no inference is required. To show religious discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. *See Hill*, at 286–91. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151–52, (2000); *Holley v. N.C. Dep't of Admin.*, 846 F.Supp.2d 416, 427 (E.D.N.C.2012).

Here, while Ramseur alleges religious animus in Perry's alleged comment that she was fired for failing to work on Sunday, there is insufficient evidence from which a jury could find that Perry, who at most recommended termination, was the actual decisionmaker or that there was direct religious discrimination by any of the Concentrix decisionmakers.[5]

---

[5] Courts should not quickly attribute "to any ultimate decision maker ... the most unfortunate expressions and beliefs of those around him." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir.2010). "[T]hat any distasteful comments will arise in the workplace" is regrettable. *Id.* "[B]ut that cannot mean that the actual decision maker is impugned thereby. It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially

8

Case 5:19-cv-00065-KDB-DCK   Document 20   Filed 06/15/20   Page 8 of 17

However, even without direct evidence of religious discrimination, a plaintiff s Title VII claim can survive summary judgment if the plaintiff raises a genuine issue of material fact under the burden-shifting framework established in *McDonnell Douglas*. Under this analysis, a plaintiff must first establish a prima facie case of discrimination. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action "for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Hill*, 354 F.3d at 285 (quotation omitted).

The elements of a prima facie claim of discrimination under Title VII are well established. "The plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007), citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817 (1973).

Alternatively, to establish a prima facie case of discrimination in the enforcement of employee disciplinary measures, the plaintiff must show: (1) that he is a member of a class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary

---

reduced." *Id*.; *see Brinkley v. Harbour Recreation Clu*b, 180 F.3d 598, 608 (4th Cir.1999), overruled on other grounds by *Desert Palace. Inc. v. Costa*, 539 U.S. 90 (2003).

9

measures enforced against him were more severe than those enforced against those other employees. *See Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993); *Moore v. City of Charlotte,* 754 F.2d 1100, 1105–06 (4th Cir.1985).

Moreover, a plaintiff can bring religious discrimination cases under two separate theories—disparate treatment or failure to accommodate. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 573 U.S. 991 (2015); 42 U.S.C. § 2000e–2(a). An allegation of "disparate treatment" alleges "intentional discrimination" under 42 U.S.C. § 2000e–2(a)(1) on the basis of religion. That provision prohibits an employer from (1) "discriminat[ing] against any individual" (2) "because of" (3) "such individual's ... religion." Id. § 2000e–2(a)(1). Title VII further defines religion to "includ[e] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j) (emphasis added).

"Because this definition includes a requirement that an employer 'accommodate' an employee's religious expression," an employee alleging intentional discrimination under §2000e–2(a)(1) can bring suit based on a disparate-treatment theory or a failure-to-accommodate theory. *See Chalmers*, 101 F.3d at 1018 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977)). Each theory is discussed separately below, beginning with Ramseur's disparate treatment claim.

A. <u>Disparate Treatment Claim</u>

The Court finds that Ramseur cannot establish her prima facie case under Title VII for at least two reasons. First, although she is a member of a protected class because of her religious

belief that she should not work on Sunday and suffered an adverse employment action by her termination, she has failed to establish that a reasonable jury could find that she had a "satisfactory job performance" or that she was treated worse than other similarly situated employees. *See Chalmers*, 101 F.3d at 1017 (An employee "must demonstrate that the employer treated her differently than other employees because of her religious *beliefs*" to win on a disparate treatment theory) (emphasis in original).

In order to create a triable issue regarding the issue of satisfactory job performance, "a plaintiff must proffer evidence of a genuine dispute concerning whether, 'at the time of h[er] dismissal, [s]he was performing h[er] job in a way that met the legitimate expectations of [the defendant]. Specifically, the Court looks to the perception of the decision-maker in considering whether the employee was meeting job expectations at the time of dismissal.'" *Reid v. Dalco Nonwovens, LLC*, 154 F. Supp. 3d 273, 285 (W.D.N.C. 2016) (quoting *Pettis v. Nottoway Cnty. Sch. Bd.*, 980 F.Supp.2d 717, 725 (E.D. Va. 2013)). The evidence is undisputed that Concentrix believed that Ramseur's absenteeism record reflected less than "satisfactory performance." Ramseur nevertheless argues that she was doing satisfactory work at Concentrix because she had not received any discipline regarding her *performance* since 2014, and she disputes Concentrix's calculation of her attendance points. However, the lack of complaints about her performance are not relevant to her unsatisfactory record of attendance and, in any event, regardless of the "real" number of her attendance points (which she admits that she does not know) it appears to be undisputed that Concentrix *believed* that she had far more than the number of points to support termination.[6]

---

[6] Also, there appears to be no dispute that all but 2 of the 50 attendance points she is challenging relate to FMLA and other issues unrelated to her claims of religious discrimination.

11

Therefore, even considering the facts in the light most favorable to Ramseur, a trier of fact could not reasonably find that Concentrix's decisionmakers did not believe Ramseur had accumulated enough attendance points to warrant her termination. Accordingly, Ramseur has not made a prima facie showing that her job performance was satisfactory at the time of her termination.

Ramseur also fails to establish a prima facie case of intentional religious discrimination because she has not provided evidence that other employees who had different beliefs were treated better than she for engaging in similar conduct. Ramseur has not produced evidence of any other individual, religious or not, being fired for refusing to work on Sundays. In her brief, Ramseur argues that the Court should compare her to herself. She argues that Concentrix's "proffered nondiscriminatory reason" for her termination, absenteeism, "only strengthens her case by making Ramseur her own direct comparator." Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss 8, ECF No. 17. Ramseur does not provide a citation or further explanation to support this argument.[7] Since Ramseur has not produced any evidence that other employees who had different religious beliefs

---

[7] At oral argument, Ramseur cited *Chalmers* to substantiate her understanding that employees can establish a prima facie case of religious discrimination under a disparate treatment theory without showing that other similarly situated individuals were treated better. However, Ramseur misinterprets *Chalmers* as it relates to disparate treatment cases. As she writes in her brief, *Chalmers* states that "[i]n a **religious accommodation case**, an employee can establish a claim even though she cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for her discharge." Pl.'s Br. Opp. Def.'s Mot. Dismiss 7, ECF No. 17. (citing *Chalmers*, 101 F.3d at 1018) (emphasis added). *Chalmers* thus holds that an employee does not need to compare herself to similarly situated employees in an accommodation case, but this proposition does not translate to *disparate treatment* cases. *Chalmers* states that "[t]o prove a claim under the disparate treatment theory, **an employee must demonstrate that the employer treated her differently than other employees** because of her religious *beliefs*." 101 F.3d at 1017. (emphasis added). In other words, *Chalmers* supports the proposition that employees attempting to prove religious discrimination under a disparate treatment theory must compare their employer's treatment of them to that of an employee other than themselves.

were treated better than she, she cannot establish a prima facie case of religious discrimination under a disparate treatment theory for this reason as well.[8]

Also, viewed more broadly, Ramseur fails to establish through either direct or indirect evidence that a reasonable trier of fact could infer that her discharge was discriminatory. Ramseur argues that the circumstances surrounding her termination could lead to a reasonable inference of discrimination because she claims her discharge occurred immediately after she refused to work for religious reasons. She argues that Concentrix only terminated her after she had been absent for two consecutive Sunday shifts in 2017. (As noted, the parties do not agree on whether Ramseur was scheduled to work on Tuesday, September 5, 2017, the day she was terminated).

Again, however, Ramseur must do more than dispute whether she was required to work on September 5. She must proffer facts from which a jury could reasonably conclude that Concentrix did not believe she was supposed to work on that Tuesday. In other words, it is not for the Court to determine whether or not Ramseur was supposed to work on any particular day. The Court's role is to decide whether there is sufficient evidence from which a jury could find intentional religious discrimination.

As discussed above, Ramseur's history of absenteeism, even accounting for her disputed FMLA and religious accommodations, demonstrates that a reasonable trier of fact could not infer that her termination was discriminatory in nature. When Concentrix terminated Ramseur, the company's undisputed records show that she had accumulated more than 50 attendance points—over four times the 12 points required to terminate an employee under the company's Attendance

---

[8] Ramseur claims that there were "a lot of people" who had accrued over 12 attendance points but were not terminated for their attendance record. However, Ramseur herself was not terminated for having more than 12 attendance points for several years so the fact that the company apparently does not always terminate employees immediately upon reaching 12 points is not a basis for relevant comparison in this context.

13

Policy. Ramseur concedes that the most points she could have received in 2017 from Sunday absences was 2. So, even assuming all of Ramseur's other unexcused absences in 2017 were FMLA excused absences as she claims, Ramseur had still accrued 12.25 attendance points as of May 2014. Ramseur concedes that from April 2012 to May 2014, Concentrix had complied with her religious accommodation request.

Ramseur also acknowledges that her supervisor had taken off points for Sunday absences prior to her written counseling in May 2011 (and otherwise accommodated her request not to work on Sunday from 2012 to 2017). In short, Ramseur had already accumulated enough attendance points by May 2014 to warrant her termination under Concentrix's attendance policy. Thus, even construing the facts in the light most favorable to Ramseur, a trier of fact could not reasonably infer that religious discrimination motivated Concentrix's decision to terminate her.

B.      Failure-to-Accommodate Claim

Concentrix is also entitled to summary judgment because Ramseur has not established a prima facie case of religious discrimination under a "failure-to-accommodate" theory. To establish a prima facie failure-to-accommodate claim she must show:

1) She has a bona fide religious belief or practice that conflicts with an employment requirement, and
2) Her need for an accommodation of that religious belief or practice served as a motivating factor in the employer's adverse employment action.

*See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) (clarifying that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions").

The parties agree that Ramseur has satisfied the first element. Ramseur had previously sent a religious accommodation request to Concentrix, which included literature from her church's

rulebook condemning work on Sundays and a corresponding note from her Reverend. However, the parties dispute the second element. Ramseur claims that her religious need to not work on Sundays was the motivating factor behind her dismissal from the company because Concentrix terminated her in response to two Sunday absences. On the other hand, Concentrix argues that it terminated Ramseur after her No-Call-No-Show on Tuesday, September 5.[9]

Regardless of whether Ramseur was scheduled to work on Tuesday, September 5, a reasonable trier of fact could not conclude that her religious belief against working on Sundays was a "motivating factor" in her termination. The main point of the failure-to-accommodate theory is that employers cannot make a "religious practice, confirmed or otherwise, a factor in employment decisions." *Abercrombie*, 575 U.S. at 780. In this case, a trier of fact could not reasonably infer that Ramseur's religious belief was a motivating factor in her termination. First, Concentrix has an undisputed history of accommodating Ramseur's religious objection to working on Sunday when she requested accommodation. Ramseur concedes that from April 2012 through July 2017,[10] Concentrix had followed her religious accommodation request and removed points for Sunday absences that were erroneously added to her attendance record. She also concedes that she was only scheduled to work on two Sundays in 2017. Both of these Sundays were added to her schedule after the August 2017 shift bid in which she voluntarily bid on a schedule that included weekend shifts when an alternate schedule that did not involve Sunday work was available.

---

[9] As mentioned earlier, the parties dispute Ramseur's work schedule for Tuesday, September 5. Ramseur claims that she was off that day. Concentrix has provided a calendar that shows she was scheduled to work that day. Both parties agree that she was absent from work on Tuesday, September 5.

[10] During her deposition, Ramseur acknowledged that her religious beliefs were accommodated prior to 2017. Pl. Dep. 56:17-20. She also concedes that these accommodations began in April 2012. *Id.* at 65:14-16.

Also, Concentrix's records show that Ramseur had accumulated over four times the requisite amount of attendance points to warrant her termination under the company's Attendance Policy. And, Ramseur's argument that she had not received over 12 attendance points as of July 2017, two months prior to her termination, is unsubstantiated. In fact, she confirmed that she has not "actually…done the math to figure out how many points [she] would have had" as of July 2017. (Also, in May 2014, she signed a Counseling/Separation Record to acknowledge that she had received written counseling because she had accumulated 12.25 attendance points).[11]

Further, Ramseur's basis for this claim is almost totally premised on her belief that Concentrix incorrectly calculated her *FMLA* absences, which are unrelated to her religious accommodation claims (which relate to only 2 attendance points). Whether or not Concentrix correctly accounted for FMLA absences, even a proven mistake regarding FMLA absences does not support Ramseur's claim that Concentrix was motivated by *religious* discrimination in her termination.

---

[11] At oral argument, Ramseur pointed to her success in having her supervisor remove Sunday absences from her attendance record on April 2, 2012 to demonstrate that Concentrix's recordkeeping of her absences was faulty. However, the record does not suggest that she has successfully had points removed from her attendance record for Sunday absences since that date, which reflects Concentrix's accommodation of her religious belief against working on Sundays until after the shift bid in August 2017 in which she bid on a schedule that would include weekend shifts Pl. Dep. Ex. 11 79, 81, ECF No. 15-2. Additionally, Ramseur claims that Concentrix incorrectly calculated her FMLA, so her attendance points are inflated. In her brief, Ramseur claimed that the calendar of Ramseur's work schedule that Concentrix provided in Exhibit 11 does not differentiate between her absences, FMLA, or religious accommodation. Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss 8, ECF No. 17. However, the calendar located in Exhibit 11 shows that she took many FMLA days throughout 2017, and these days do not appear to be counted as unexcused absences. Pl. Dep. Ex. 11 82-84, ECF No. 15-2. Also, Concentrix's calendar shows that Ramseur was refunded 0.75 of a point for tardy arrivals on January 4, 5, and 6, 2017 that should have been counted as FMLA. *Id*. at 79. Ramseur has claimed that all her absences from 2017 are FMLA, but there is no evidence in the record to explain why some absences would have been marked FMLA and others that Ramseur claims were FMLA time were not.

In sum, a trier of fact could not reasonably find that Ramseur's religious belief against working on Sundays was a "motivating factor" in her termination because of Concentrix's prior religious accommodations and her long history of absenteeism.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Concentrix's Motion for Summary Judgment (Doc. No. 15) is hereby **GRANTED;**

2. Summary Judgment in favor of Defendants is entered on all of Plaintiff's claims; and

3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 15, 2020

Kenneth D. Bell
United States District Judge